The Honorable, the Judges of the United States Court of Appeals for the 4th Circuit. Oyez, oyez, oyez, all persons having any manner or form of business before the Honorable of the United States Court of Appeals for the 4th Circuit are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. You may be seated. Your Honor. Thank you, Chief Judge Gregory, and may it please the Court. Under federal regulations, asylum applicants who have been subjected to past persecution enjoy a presumption that they would also have a well-founded fear of future persecution. In this case, the Board found that DHS rebutted that presumption by establishing that my client could relocate internally within Pakistan. We asked the Court to vacate or reverse that determination for at least one of three reasons. First, instead of requiring DHS to show that my client could relocate within Pakistan, it placed the burden on my client to show that he could not relocate within Pakistan. Second, the Board did not identify a specific area of Pakistan in which he could ostensibly relocate. Did you argue that at the BIA level, the specific area argument? I'm not sure that argument was made, but I think the Board itself committed the error by saying that he could relocate in Pakistan or in Islamabad or elsewhere in Pakistan. So are you saying you didn't need to raise that at the BIA level for us to consider it now? Yes, we think the Board's decision itself raises that issue, and I would also note that the government did not raise any exhaustion arguments. I know it is jurisdictional in this circuit, but whether exhaustion is jurisdictional is presently before the Supreme Court. And then third, we believe the Board erred on the merits in finding that my client could relocate within Pakistan. And even if the Court was inclined to uphold the Board on the existing record, evidence of which it may take judicial notice demonstrates that the Board's decision can no longer stand. So unless the Court prefers otherwise, that will address the issues in that order. The first and most fundamental error in the Board's decision was that it did not shift the burden to DHS to affirmatively establish that my client could relocate within Pakistan. Despite stating that DHS satisfied its burden, its actual analysis shows that it placed the burden on my client to show that he could not relocate within Pakistan. The Board began to pass it in question by stating that my client's assertion that he could not safely relocate was not supported by the objective evidence in the record. Then after discussing the evidence... Didn't the Board, I think you already mentioned this, that the Board did begin and end by articulating the correct presumption, right? Correct, but its actual analysis shows that it did not actually, that it did not flip the burden in fact. So after discussing the evidence before, the final sentence of that paragraph, it said, the record did not support my client's claim that he could not relocate in Pakistan. And then again, in the very next sentence, the Board stated that my client had not shown that he would be unable to relocate in Pakistan. Now the government argues that the Board did not fail to shift the burden because it upheld the IJ's decision and the IJ did not fail to shift the burden. But in fact, the IJ herself did fail to shift the burden and as is made clear, it's on page 348 of the record, when she said immediately before issuing her oral decision, quote, I really think this case comes down to whether internal relocation is possible and I'm not convinced that it is not possible in your case. Now the government also claims that the Board... What if we're satisfied nonetheless that the record supports the government's view of the evidence with respect to relocation? Does it matter that perhaps the standard was muddled over the course of the two decisions? It does, Your Honor, for a few reasons. One, under the ordinary remand rule, when the agency applies the wrong standard or the wrong burden, the remedy is to remand for further consideration. And the only exception to that principle is very limited in cases where it would be unquestionably futile to remand. Second, I would also note that in Moguevero, this court held that a general statement regarding the burden of proof cannot overcome an erroneous instruction as to how a party can satisfy its burden. So by analogy, if a judge told a criminal jury that the prosecution had to establish its burden beyond a reasonable doubt, but that they should return a verdict of guilty unless the evidence firmly proved the defendant was innocent, then that would clearly be grounds for reversal. And we think that would also be grounds for reversal in this case. Instead of asking whether DHS established whether my client could relocate, the Board stated on three separate occasions that the record did not establish that he could not relocate. So by definition, we think the Board failed to shift its burden. Now this court has not confronted a similar question in an immigration case, but we think the facts of this case are materially indistinguishable from the Sixth Circuit's decision in Antonio v. Barr and the Ninth Circuit's decision in Afriy v. Holder. And we relied on both cases in our opening brief, and the government does not mention them in their answering brief. So unless the government offers some basis to distinguish those cases today, we think the court should presume that they are not distinguishable. Now the second error in the Board's decision was that it failed to identify a specific area of Pakistan where my client could ostensibly relocate. Now the government claims somewhat contradictorily in our view, both that the Board was not required to identify a specific area, but that it identified Islamabad as a specific area where he could relocate. But we think the government is mistaken on both counts. But the government did identify Islamabad on a couple of occasions, correct? But it was not – well, a few responses, Your Honor. One, it was not limited to Islamabad. It was Islamabad or other areas in Pakistan. Second, we don't believe Islamabad is really even on the table as a possible area of relocation because under this Court's precedent, my client was persecuted in Islamabad. And the regulations contemplate that a noncitizen has to relocate to another part of the country where they were not persecuted. Now in terms of the underlying legal requirement, the Board clearly stated in – How was your client persecuted in Islamabad? Oh, because he received phone calls from the Taliban that threatened him with death. And under this Court's precedent, death threats, even delivered by phone, qualify as persecution. Now in terms of the underlying legal requirement, in MZMR, the Board clearly stated that when an asylum applicant was the victim of past persecution, DHS must demonstrate, quote, that there is a specific area of the country where the applicant could relocate. Now that guidance is not only consistent with guidance provided by the UN High Commissioner for Refugees, but it is also consistent with the regulations themselves. The regulations say that when considering whether it would be reasonable for an asylum applicant to relocate, adjudicators must consider whether the applicant would face other serious harm in the place of suggested relocation. Well, but the regulation itself talks about designating another part. Are you saying that there really is no distinction there, that by indicating another part of the country where the petitioner could relocate, that the agency needs to be specific as to the place? Yes, because the regulations also subsequently refer to the place of suggested relocation.  Because otherwise, if a specific place of relocation was not identified, it would be virtually impossible to conduct the reasonableness process. Wouldn't it depend on the facts? I mean, if we're talking about a, and I know you don't concede that this is the point, if we're talking about, for example, a local gang that operated in one specific part of a country, one town or a province, but there was no other evidence that the gang operated elsewhere, wouldn't the government meet its burden by simply showing generally that the petitioner could relocate to those other parts of the country without designating a specific place? Well, we don't think that would be consistent with the regulations for the reasons I mentioned. But even in that scenario, the government could simply then identify one specific place in the rest of the country in order to satisfy its burden. Because as we recognize that the Ninth Circuit has not adopted our approach, but the Ninth Circuit did say that even if the government can propose a more general area, that the government has to show that the entirety of the area is safe for relocation. So if the suggested place of relocation in this case is simply anywhere outside the former tribal area, that would also include the city of Peshawar, where my client was undoubtedly persecuted and where the Taliban left a note for him outside his brother's home. And it would also include the many parts of Pakistan that are completely uninhabitable. So even if this court adopts the Ninth Circuit's approach, we think that would not help the government on the facts of this specific case. Now, to the extent that the government argues that Islamabad was identified as a specific area of relocation, we think it is also incorrect. In finding that my client could relocate within Pakistan, the board noted that he had 10 siblings who lived in different areas of Pakistan. And my client testified, this is on page 343 of the record, that none of his siblings live in Islamabad. So the board could not have simultaneously identified Islamabad as a specific area of relocation when it suggested that he could live with any one of his siblings, none of whom actually live in Islamabad. What's the record evidence as to the reach of the Taliban within Pakistan generally? In the administrative record, certainly in the province in which my client, the fatah itself no longer exists, but in the province in which it was assumed is its base. But certainly the Taliban has carried out terrorist attacks in other parts of the country. And to the extent there is any ambiguity in the record, it is the government's burden to show that the Taliban does not have reach throughout the country. But that really gets to the merits. And on the merits, the question is not simply whether the Taliban would successfully locate my client elsewhere in the country. The question is whether my client would have a well-founded fear of persecution anywhere else in the country. And as I mentioned, under this court's precedent, a death threat delivered by phone qualifies as persecution. Now, on the merits, if the court does reach the merits, we would ask it to reverse the board's decision. We argue in our briefs that that inquiry is subject to de novo review. But this court does not need to reach what the correct standard of review is. Can I ask a question about that? So if we reach the merits, is it your view that a reasonable adjudicator could come to a different conclusion other than that your client faced a reasonable fear of persecution on this record? I mean, you don't ask for a remedy from us. You're asking for a remand for the agency to do it again so that we can come back here again and make the same argument. No, certainly not, Your Honor. If the court reaches the merits, and even if it applies substantial evidence review, we would ask it to hold that no reasonable adjudicator could find that DHS established that there was a part of Pakistan in which my client would not have a well-founded fear of persecution. We think that is so for four reasons. So we don't have to accept your de novo standard of review in order to rule in your favor? Is that what you're arguing? Precisely, Your Honor, precisely. So even under substantial evidence review, we think for four related reasons, no reasonable adjudicator could find that there was a part of Pakistan in which my client would not have a well-founded fear. The first is that my client fears being persecuted by the Taliban itself, which is a designated terrorist organization that has already killed more than 30,000 Pakistanis. Second, the Taliban already attempted to kill him on one prior occasion and sent him a note saying that only death could spare him. Third, the individuals who wish to harm my client already attempted to track him down elsewhere in Pakistan and promised to find him, quote, wherever he went. And fourth, as I've mentioned, persecution does not require physical harm under this court's precedent, or even face-to-face contact. A simple death threat would suffice. So, Your Honors, if the lawyer— So a death threat in the abstract without any real ability to carry it out would suffice? I mean, that's not this case. I know you argue, but, I mean, we have to have something more than simply a threat, right? Well, this court has said very clearly that a death threat qualifies as persecution. In which case? Well, certainly Portillo Flores and many other cases where they said— No, I don't dispute that, but the question is, in terms of a reasonable fear of persecution, if that threat is meaningless because, for example, the persecutor is behind bars for the rest of his life, there's got to be some realistic possibility of the threat being carried out. Certainly, Your Honor, if there was no realistic possibility of being carried out, then yes, there could potentially be an exception to this court's rule. But in this case, we're dealing with the Taliban, and that's clearly not the case. So the question—even though my client does fear that he would be killed in Pakistan, that's not the question before the court. The question is whether any reasonable person in his position would not fear even being threatened with death. Or, put differently, whether DHS established that no person in my client's position would fear being threatened with death somewhere in Pakistan. And we don't believe that DHS met its burden. But even if DHS did meet its burden with regard to the safe relocation prong, it did not meet its burden with regard to the reasonable relocation prong. And we know this from the IJ's oral decision itself. The IJ found that it would not be unreasonable to expect my client to relocate within Pakistan because he would face the same general risk of violence as the rest of the population. But that observation does not mean what the immigration judge apparently thought it meant. While it is true that a generalized risk of violence may not be sufficient to establish a fear of persecution on account of a protected ground, when an asylum applicant has already been subject to past persecution on account of a protected ground, as my client indisputably was, a countrywide risk of generalized violence only shows that it would not be reasonable to expect him or her to relocate to another part of the country. So the IJ's decision in this respect was self-contradictory. And given that the IJ herself found that my client would face a generalized risk of violence elsewhere in the country, we believe it simply does not matter whether he would be able to find employment or live with one of his siblings in another part of the country. Thank you, Mr. Winograd. Mr. Stalzer. Good morning, Your Honors. Counsel, can you hear me okay? Yes, I can. May it please the Court, Rob Stalzer on behalf of the AG. Your Honors, asylum is reserved for applicants who cannot avail themselves of safety of their home country anywhere in their country. And that's why the regulations focus on whether relocation is a possibility, whether it would be reasonable for the applicant, under all the circumstances, to relocate. Those are circumstance-specific questions that the board and the immigration judge found in this case, affirmatively found, that he could relocate. Is there anything in this record that would suggest or support the idea that the Taliban has any place in Pakistan that it can't reach? In this record, is there any evidence that there's any place in Pakistan that the Taliban does not have the reach? I don't believe so, Your Honor, but that's a hypothetical. Well, we're saying, could they get anywhere? Yes. A person could go anywhere in Pakistan, the Taliban especially, because they do have the resources to move within the country. So aren't we talking about finding a place where he's supposed to be able to relocate? Yes, Your Honor, under all the circumstances. And one of those circumstances is that the Taliban is present in Pakistan. But other of the circumstances are the factors that the regulations say the immigration judge must consider. And based on the factors here, where could he possibly relocate in Pakistan? All right. The immigration judge and the board identified two possibilities. One Islamabad and one outside of the Taliban-controlled areas. Just anywhere outside. Where would that be, based on what your answer to Chief Judge Gregory just now? For example, Petitioner testified that his family had relocated away from the Khyber agency to get away from their antagonist and had done so successfully. And then I believe he also testified that some of his sisters had also married and moved even further out. But this is not a case where we're talking about a group, a protected group or family situation. We're talking about because of assistance to America. That's different. I mean, if it was saying based on my family and you could say, oh, your family is doing well here. This is not this case, is it? This is just this is not family. That is one factor to consider, Your Honor, under the regulations. But it's a fact to be considered. But the facts of this case would make it a very small consideration here. It was that I'm after you because what you have done to assist the United States. So your family members being around those locations wouldn't be safe for him, would it? I mean, under these facts, I'm talking one of these facts. I don't talk about some offering aspect of it, but these facts, this case, how do you equate that? Because there was no evidence, Chief Judge, that they would find him or could find him in any of those areas. The only time he lived with a family member, he lived with his brother and the Taliban found him there and he had to leave. They left the letter. Yes, Your Honor. So that was in Peshawar, not Islamabad. Well, that's the only time he lived with a family member and that didn't work. So so I don't see how it's reasonable to think that he could just live with some unnamed family member in some unnamed place and be safe. Because of his age, his educational statistics or excuse me, his educational characteristics, because Islamabad is a city of a million people and there was no evidence that they could follow him there or find him. But the only time he testified to this. They continued to threaten him for the only three to four weeks he was in Islamabad, correct? Over his cell phone. He never had an in-person confrontation. Do you have to have an in-person confrontation? And perhaps one of the reasons they didn't have an in-person confrontation is because he also testified he stayed inside the entire time he was in Islamabad. Is the government arguing that he must live in hiding the rest of his life? No, Your Honor, we're not arguing that. To answer your first question, yes, it is persecutory to receive death threats over cell phone, not just a personal confrontation. But the point or the thrust of the immigration judge's factual findings on this point is that he was on the same cell phone they already had. And there was no evidence that they could ever find him without that cell phone. Can I ask you that? So this is to Mr. Barakali on the other side's question about the burden. You keep saying there was no evidence that they could find him. But the question, the burden is on the government to show that there was evidence. The record supports the notion that they couldn't find him, not that they could find him. I mean, isn't that inverting the burden? I think it's an assessment of the evidence as a whole. This is one of the characteristics or the circumstances that has to be taken into account as to whether he can relocate. Once he's outside of the Fatah, once he's outside of Peshawar, either in Islamabad or another area of the country where the Taliban does not have control, because that's what the immigration judge said, whether they could or would find him. Why is control? I mean, control certainly is not irrelevant. But that doesn't mean, as the chief indicated, you conceded that apparently the Taliban can reach anywhere in the country. So at that point, it's incumbent upon the government to show that they couldn't find him in a specific place. And the government didn't present any evidence, right? No, Your Honor. The government relied on the documentary evidence of record and petitioner's own testimony to conclude that he could reasonably relocate. And what is the strongest piece of petitioner's own testimony that would demonstrate that he could successfully and safely relocate? I would say the fact that the family continues to reside safely in Pakistan. Those family members are in a bit of a different position, right? Because as best I could tell, maybe you can correct me if I'm wrong. He was the one who personally insulted the leader, the local leader, I guess, and received sort of the death warrant that the others did not. Does that change the calculus? I'd say they are in a similar position for the reason this was a family business. And after Petitioner left, they continued the family business and then the Taliban destroyed it. And that's why they moved out of Khyber District, or Khyber Agency, was because they couldn't stay there anymore. But the Taliban apparently hasn't followed them, hasn't sought them out. They continue to reside safely in Pakistan. So to answer Judge Thackeray's question, what would be the strongest evidence? I think that is the strongest piece of evidence in conjunction with the other factors that the immigration judge considered. Because, of course, the standard is in all the circumstances whether it would be reasonable to expect if there's any place in Pakistan that he could live safely from the— Do you agree with opposing counsel that the government needed to identify a specific location where he could reside safely? I'm glad you asked that, Your Honor. And the answer is they didn't have to name a specific neighborhood or a specific city or a specific province. They had to point out where he couldn't go or shouldn't go. And based on— And what is your authority for that? Because he has authority for his position. MZMR itself used the language specific area. But the specific area in MZRM was outside his home village. In other words, in MZRM itself, which used the word specific area, they thought it sufficient to say outside the area of danger. And that was echoing the First Circuit in Tandiyan against Gonzalez. And, of course, the Ninth Circuit most recently confronted that issue in Singh against Whittaker and agreed that it is enough to simply say outside of the area of danger, not specifically identify a province. The entire country here is an area of danger. We don't know that. That's conjecture. I thought you conceded that in response to Chief Judge Gregory's question. The very first question. The very first question was whether the Taliban could reach anywhere in Pakistan. You said yes. Yes. That doesn't mean they can kill him or hurt him anywhere in Pakistan. I don't know what they can do anywhere in Pakistan.  Yes, Your Honor. Anonymous intent and broad and complete reach. How does that not equate to a reasonable person fearing their life wherever they are in Pakistan? Because it's speculative. Well, look, they beat him up. They shot at him and his brother. They sent death threats. They told him they would find him anywhere and kill him. So how is that speculative? Yes, they did those things to him in Fatah where they could find him. They said they would find him anywhere he went and kill him. So in order for the government to have proof that he could not safely relocate, they need to find him and kill him? That sounds a little bit like what you're arguing. I apologize, Your Honor. Or he must live in hiding the rest of his life. Right. I don't believe that's the case. I think the evidence here establishes that he could reside safely somewhere else, even though the Taliban at one time were looking for him because there wasn't evidence that they could find him in a city like, for example, Islamabad of a million people. They only found him when he left. And he testified to this, right? He was asked if he had ever been confronted by the Taliban outside of Fatah. And he said no. And the reason for that was because the only way they could find him in Islamabad was because he was using the same cell phone number. He stayed inside the entire time he was in Islamabad. That's perhaps another reason they couldn't find him in Islamabad. We don't know that. Right. But it's the government's burden. Do you agree it's the government's burden? It is the government's burden. To come forward with some sort of affirmative. Yes. Okay. Just a bit of housekeeping. Regarding the supplemental State Department report, I just wanted to, as I did in my motion, urge the court to reject that as a supplemental filing. Neither the immigration judge nor the board could rely on it. And so it didn't serve as a basis of either of their decisions and shouldn't be under review here. To return to the merits, the two prongs, right, whether he could relocate. And for there, the question was, again, his family managed to relocate. The encounters with the Taliban only occurred in the Fatah region, in-person encounters, I should say. And then, of course, on the second prong, whether under the circumstances it's reasonable to do so. This was the board and the immigration judge were required to address the factors about his personal circumstances, including his age, his educational status, social status. I think the immigration judge mentioned his maturity and resourcefulness and the ability to relocate. And then there, too, is his family support structure, because he does have a family support structure in the country to help him. And that is why it would be reasonable to expect him to relocate on the merits and honors. And what assistance would they give him to protect him from the Taliban? We're not talking about food and shelter. So tell me what protection would they give him? Well, I imagine. Imagine I'm using your words. He has family that can give him protection. Tell me what protection his family would give him from the Taliban. Because don't say food and shelter and love and respect. I'm sure you get that from him. But what protects him, they can give from the Taliban? Infrastructure. Infrastructure and a home? Yes, Your Honor. What's your position on the standard of review? I believe the board, of course, reviews this for clear error, suggesting we're talking about factual questions. In the past, this court has reviewed it for substantial evidence, again, because we're talking about factual questions. I agree with that prior precedent. And I think that the board appropriately applied clear error review here and that your review here is for substantial evidence. The reason for that is because we're talking about a circumstance-specific inquiry. This isn't an inquiry that admits of broad legal generalizations, which is what we normally think of when we think of the noble review. The court issuing a legal principle that the immigration judges and the board can then apply and say, no, the court just told us this is how we have to do this. Instead, we're looking at a circumstance. This is a case-specific fact-finding, which is why I think that the court should continue to employ these substantial evidence standard of review. So the government, in the hearing before the immigration judge, focused on the three- to four-week window, during which the petitioner was able to remain in Islamabad, albeit in hiding, as he testified. And he received a call from the Taliban. And you say the government says, well, that's because he didn't change his cell phone number. But put that aside for the moment. I mean, isn't that just too short of a window to sort of figure out whether or not the petitioner in this case could actually avoid persecution? The standard is whether he can reasonably avoid persecution for the rest of his or her life, right? And I guess we get back to the burden. The government had the burden to present evidence to support that notion. And I think you can tell by our questions, we're kind of struggling to see that evidence in the record. So what is the strongest piece of evidence that the petitioner could avoid persecution for the rest of his or her life? Again, like I said, because the family safely resides in the country, as long as, again, outside of the Taliban-controlled areas. Where in the record is the indication that the family safely resides in the country? I think petitioner testified to that, but I don't have a record site for you up here. Petitioner also testified that his brother had been shot at, correct? Yes, his brother was in the car when they were shot at inside the Fatah. And the brother was actually hit. Yeah, all three of them were injured, Your Honor. But that was when they were inside the Fatah and while the business was still operating. For reasons I've stated, I've urged the court to deny the petition for review. I hear you. If you have any other questions, Your Honors. Thank you, Mr. Stelz. Appreciate your time. Thank you. Mr. Willengrad, anything further? Thank you, Your Honors. I would like to start by incorporating Chief Judge Gregory's opening question to my colleague as my answer to Judge Diaz's original question. The question is whether the record shows that whether there is any evidence that there is a part of Pakistan that the Taliban cannot reach. And that is also consistent with guidance from the U.N. itself, which we cite on page 46 of our brief, which says that when considering whether a non-citizen could avoid a non-state persecutor through internal relocation, it is not sufficient simply to find that the original agent of persecution has not yet established a presence in the proposed area. Now, with regard to my client's family, we find that simply not material to this case. The grievance is personal. I did not try this case before the immigration judge. My recollection is not that the Taliban destroyed the business, but the family voluntarily closed down the business. And, in fact, the Taliban did personally confront my client's family while he was in hiding in Islamabad. And they did not harm any members of my client's family other than grabbing his father's beard, which is a great insult, but not one that we would contend rises to the level of persecution. Now, in addition— So, then, is opposing counsel correct that the rest of his family is able to safely reside in Pakistan? There isn't any evidence either way other than what I just mentioned. But even assuming that other members of his family can safely reside in Pakistan, that makes no difference to my client. Because, as I said, the grievance is personal. And I just wanted to remind the court of my client's exact testimony regarding the phone calls he received while he was in Islamabad. And this is on page 332 of the record. Question. The phone calls you received in Islamabad after fleeing Peshawar, do you remember what the Taliban said to you? Answer. They were repeating the same things, that you are a traitor, and you were supporting and helping America, and there is only one solution to get rid of traitors, that they should be killed, and we would not spare any traitor, and that they would kill the traitors. Question. Did they ever tell whether they knew where you were after you fled to Islamabad? Answer. They were saying repeatedly that wherever you go, we can locate you, and we would not spare you, that we would kill you. So, Your Honors, given this credible testimony, we think no reasonable adjudicator could find that any reasonable person in my client's position  And this goes to Judge Diaz's question about the timing. As this court said in Ortez Cruz, the question is not whether the Taliban would immediately threaten or find him in Pakistan. The question is whether they would do so at any point in his life. And threats like the kind I mentioned don't come with a statute of limitations. So long as the Taliban continues to exist, a reasonable person in my client's position would fear being threatened with death by them. Finally, just with regard to the standard of review, the board actually applies de novo review to whether a fear of persecution is objectively reasonable. It held that specifically in matter of ZZO, which is a case we cite in our briefs. Now, in matter of MZMR, it didn't specifically address the standard of review, but it did remand the record for the immigration judge to make both factual and legal conclusions. So we think that also suggests that the board would apply de novo review to the individual inquiries of the relocation analysis. Thank you, Your Honors. Thank you both, counsel. I appreciate your arguments. We're going to come down and greet counsel, and after that, we'll proceed to our next case.
judges: Roger L. Gregory, Albert Diaz, Stephanie D. Thacker